Filed Jan. 7, 1886.

---

## No. 12,216.

## ANDERSON v. THE STATE.

CRIMINAL LAW.—*Indictment.—Venue.*—An indictment which alleges the commission of a crime in a certain county, but which does not name the State in the body thereof, sufficiently lays the venue if the State is named in the caption and upper marginal title, which are a preliminary part of the indictment.

SAME.—*Rape.—Instruction.—Theory and Testimony of Defendant.*—Where, in a trial on an indictment for rape, the defendant testifies that the act of intercourse took place, but with the consent of the prosecuting witness, he thereby commits himself to that line of defence, and the court in instructing the jury may assume that such act of intercourse occurred.

SAME.—*Moral Character and Reputation for Chastity of Prosecuting Witness.*—For instructions on this subject see opinion.

SAME.—*Attempted Escape of Defendant.*—An instruction to the effect that if the defendant, while in the custody of the sheriff, attempted to escape from such custody, this would be a circumstance to be considered by the jury in connection with all the other evidence, to aid them in determining the question of guilt or innocence, is proper, there being evidence tending to prove such attempt.

SAME.—*Testimony of Defendant.—Credibility of Witnesses.*—An instruction to

Anderson v. The State.

the effect that the defendant's testimony should be weighed as that of any other.witness, and that his interest, his manner, and the probability or improbability of his testimony should be considered, with all the other circumstances, states the law correctly.

SAME.—*Presumption of Innocence.—Reasonable Doubt.*—An instruction that "the rule of law which throws around the defendant the presumption of innocence, and requires the State to establish beyond a reasonable doubt every material fact averred in the indictment, is not intended to shield those who are actually guilty from just and merited punishment, but is a humane provision of the law, which is intended for the protection of the innocent, and to guard so far as human agencies can against the conviction of those unjustly accused of crime," is not erroneous.

SAME.—*Instruction.*—In a trial on an indictment for rape, where the act of intercourse is admitted by the defendant in his testimony, the failure of the court to instruct the jury that they may find the defendant guilty of assault and battery, or assault and battery with intent to commit a rape, is not error.

SAME.—*Rape.—Degree of Resistance Required of Prosecuting Witness.*—In a prosecution for rape it is incumbent on the State to show that the prosecuting witness had resisted with all the means within her power, but the nature and extent of resistance which ought to be reasonably expected in each particular case depends upon the peculiar circumstances attending it.

SAME.—*Misconduct of Prosecuting Attorney in Opening Statement.—Practice.*—While the use of opprobrious epithets toward the defendant by the prosecuting attorney in his opening statement is such a breach of professional decorum as would justify the trial court in restraining him, yet it is not of sufficient importance to justify the Supreme Court in a reversal of the judgment.

SAME.—*Right of Jury to Determine the Law.*—While in a criminal case the jury may determine the law for themselves, they are not, strictly speaking, the sole judges of the law of the case, neither may they disregard the law; and an instruction which informed the jury that, "even if all the facts alleged in the indictment are established beyond a reasonable doubt, you have still the right to determine whether or not such facts, when so established, constitute a public offence under the laws of the State, and if you determine that they do not, you have the right to acquit the defendant," was properly refused as implying an unnecessarily extreme construction of the constitutional right of a jury in a criminal case.

From the Noble Circuit Court.

*H. G. Zimmerman, F. Prickett, L. H. Wrigley* and *S. M. Hench,* for appellant.

*F. T. Hord,* Attorney General, *H. C. Peterson* and *R. P. Barr,* for the State.

Anderson *v.* The State.

NIBLACK, C. J.—This was a criminal prosecution based upon the following indictment:

"STATE OF INDIANA, NOBLE COUNTY, ss.

"In the Noble Circuit Court, of the June term, 1884.

"STATE OF INDIANA *v.* JOHN ANDERSON.  Indictment.

"The grand jury of the county of Noble, upon their oath, do present that John Anderson, on the 18th day of June, 1884, at the county of Noble, in and upon one Josephine Fielding, a woman, did forcibly and feloniously make an assault, and her, the said Josephine Fielding, then and there, forcibly and against her will, feloniously did ravish and carnally know, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

Anderson, the defendant below and the appellant here, moved to quash the indictment, upon the ground that it was not charged with sufficient certainty that the crime was committed in Noble county, in this State.  The circuit court nevertheless overruled the motion to quash the indictment, and a trial, which ensued, resulted in the jury finding the appellant guilty as charged, and in a judgment that he be imprisoned in the State's prison for the term of five years. Numerous questions were reserved upon the proceedings below.

While the indictment was not as full, formal and explicit as the old forms required, and as it might easily have been made, it was, notwithstanding, a substantially good indictment under our present criminal code, which, for many purposes at least, makes the caption and upper marginal title a preliminary part of an indictment. R. S. 1881, sections 1732, 1733; Moore Crim. Law, sections 165, 166; 1 Bishop Crim. Proc., section 377.  See, also, section 1756, R. S. 1881.

The plain, and indeed only fair inference from the indictment, considered with reference to all its' parts, was that the county of Noble, in which the offence was charged to have

been committed, was the county of that name situate within and constituting a part of this State.

The, prosecuting witness testified that the appellant had sexual intercourse with her twice while she was alone with him in the woods near Rome City, on the day named in the indictment, and that on both occasions the intercourse was forcible and against her will. The appellant, who became a witness in his own behalf, admitted the acts of sexual intercourse testified to by the prosecuting witness, at the times and places indicated by her, but, in extenuation, claimed, and very positively asserted, that both acts of intercourse were with her full and free consent.

As applicable to the issue thus made by the evidence, the court instructed the jury as follows:

" If you find from the evidence in this case that an act of sexual intercourse did take place between the defendant and the prosecuting witness, as averred in the indictment, the question as to whether or not the prosecuting witness voluntarily consented to such act is a question of fact for you to determine from the evidence in the case.

" The defendant insists that she did thus voluntarily consent thereto, and that he used no force or coercion of any kind to compel such consent, but that she yielded to his desires upon his request alone.

" While the prosecution insists that she did not voluntarily consent, but that she resisted to the full extent of her ability, and only yielded when her will was overpowered, and that if she finally submitted to her fate it was against her will and for fear of more serious consequences.

" You are to say from the evidence which, if either, is right. And if, after giving due weight to all the evidence, you find the prosecuting witness did, voluntarily, consent to such act of intercourse, and not under coercion, you should acquit; but if you find, beyond a reasonable doubt, that the act was by force, and against her will, and find the other facts

averred in the indictment established beyond a reasonable doubt, you should convict."

The appellant assails this instruction for the alleged reason that it injuriously restricted him to a single theory in his defence, since he had the right, up to the last moment, to elect upon what ground he would base his defence. When the trial began the appellant had an election as to the ground upon which he would rest his defence. Having, however, elected to take the stand as a witness and to admit all the material matters charged against him, except the alleged forcible and felonious character of the sexual intercourse, he thereby committed himself to a single theory in his defence, for the obvious reason that by his admissions, he had rendered any and every other line of defence unavailable. The instruction in question was not, therefore, open to the objection urged against it. The court also instructed the jury as follows:

" Evidence has been introduced as to the moral character of the prosecuting witness, and as to her reputation for chastity and virtue. You are not to understand from this that a rape can not be committed on a woman of bad moral character. A woman may be a common prostitute and may still be the victim of a rape. This evidence has been introduced only for the purpose of affecting her credibility as a witness, and as a circumstance affecting the probability of the act of intercourse being voluntary or against her will, upon the theory that a person of bad moral character is less likely to speak the truth as a witness than one of good moral character, and that a woman who is chaste and virtuous will be less likely to consent to an act of illicit carnal intercourse than one who is unchaste. So that whatever conviction this evidence may produce in your minds as to whether she is of good or bad moral character, or as to whether she is chaste or unchaste, you will treat it as a circumstance affecting her credibility to aid you in determining whether her story is

true or false, and the act of intercourse voluntary or against her will."

There was evidence to which this instruction was applicable, and, in the connection in which it was given, it stated the law aptly and appropriately.

The court further instructed the jury in these words:

" Evidence has been introduced as to an attempted escape from jail by the defendant while in the custody of the sheriff of this county on this charge. If you find from the evidence that defendant did thus attempt to escape from custody, this is a circumstance to be considered by you in connection with all the other evidence to aid you in determining the question of his guilt or innocence."

There was evidence tending to prove that within a short time after the 18th day of June, 1884, the appellant was committed to the common jail of Noble county upon the charge contained in the indictment in this case, and that, not long after he was so committed, he made a vigorous and nearly successful effort to escape from that jail. That effort to escape constituted a circumstance which the jury were authorized to consider in connection with the other evidence in the cause, and, in that view, we see no error in the instruction given in relation to it as above. Whart. Crim. Ev., section 750.

The court still further instructed the jury that, " In determining the weight to be given the testimony of the different witnesses you should take into account the interest or want of interest they have in the case, their manner on the stand, the probability or improbability of their testimony with all other circumstances before you, which can aid you in weighing their testimony. The defendant has testified as a witness, and you should weigh his testimony as you weigh that of any other witness. Consider his interest in the result of the case, his manner and the probability or improbability of his testimony."

This instruction also appears to us to have stated the law

correctly on the general subject of the credibility of witnesses, and was pertinent to much of the evidence which the jury had to consider in making up their verdict. *Nelson* v. *Vorce*, 55 Ind. 455; *Canada* v. *Curry*, 73 Ind. 246; *Fisher* v. *State*, 77 Ind. 42; *Woollen* v. *Whitacre*, 91 Ind. 502; *Dodd* v. *Moore*, 91 Ind. 522; *Overton* v. *Rogers*, 99 Ind. 595.

In addition to the foregoing instructions and many others upon which no question is made here, the court told the jury that, "The rule of law which throws around the defendant the presumption of innocence and requires the State to establish, beyond a reasonable doubt, every material fact averred in the indictment, is not intended to shield those who are actually guilty, from just and merited punishment, but is a humane provision of the law which is intended for the protection of the innocent and to guard, so far as human agencies can, against the conviction of those unjustly accused of crime." Objections are made to this instruction, but no question is made upon it which we feel called upon to specially notice. It is nothing more than a substantial repetition of what has heretofore, in some form, received the approbation of this court, and notably so in the recent case of *Stout* v. *State*, 90 Ind. 1; see, also, *Turner* v. *State*, 102 Ind. 425. By an instruction known as No. 4, the court told the jury that an indictment for rape involved also a charge of an assault and battery, and that if the evidence warranted such a conclusion, the appellant might be acquitted of the charge of rape, and found guilty of an assault and battery only. By a further instruction, known as No. 14, the court submitted to the jury a form for their verdict in case they should find the defendant guilty of rape as charged; also gave to the jury a form for a verdict in the event that they might find the defendant guilty of an assault and battery only. It is contended that both of these instructions were injurious to the appellant, since they both failed to inform the jury that, under the indictment, he might have been found guilty of an assault and battery with *intent* to commit

a rape. But, as has been seen, there was nothing in the evidence tending to make out either a case of assault and battery only, or of assault and battery with intent to commit a rape. The sexual intercourse complained of having been admitted by the appellant, only one question remained, and that was, whether it took place under circumstances which constituted it a rape, or only an ordinary case of fornication or adultery. The circuit court might, therefore, have well omitted to instruct the jury that the appellant could, under the indictment, be found guilty of an assault and battery only, and for the same reason there was no error in the failure of that court to tell the jury that upon an indictment for rape the defendant might be convicted of an assault and battery with *intent* to commit a rape.

The appellant asked the court to instruct the jury in effect that a woman, assaulted with the intent to commit a rape upon her, is expected to bite, if she has teeth, to kick, if she has limbs, to scream if she has a mouth, and to generally resist by all other violent means within her power, but the court refused to so instruct the jury. The court had already instructed the jury that it was incumbent upon the State to show that the prosecuting witness had resisted with all the means within her power, and that was as far as the court was required to go under our decided cases, and others of recognized authority in this State. The nature and extent of resistance which ought reasonably to be expected in each particular case, must necessarily depend very much upon the peculiar circumstances attending it, and it is hence quite impracticable to lay down any rule upon that subject as applicable to all cases involving the necessity of showing a reasonable resistance. *Ledley* v. *State*, 4 Ind. 580; *Pomeroy* v. *State*, 94 Ind. 96 (48 Am. R. 146); *Commonwealth* v. *McDonald*, 110 Mass. 405; 2 Bishop Crim. Law, section 1122.

One David B. Anderson was called as a witness for the defence. He testified to having, in company with others, had a conversation with the prosecuting witness, on the 21st day

of June, 1884, concerning the alleged outrage upon her by the appellant and to a good many things which the prosecuting witness said on that occasion. Counsel for the appellant then asked the witness if Mrs. Fielding did not say in that conversation that she would not have cared so much if the appellant had taken her to any kind of a decent place, but upon objection being made the court overruled the question, and would not permit it to be answered, and upon that ruling a question was reserved at the time it was made. The record does not disclose the ground upon which that ruling was made, but it was presumably upon the idea that the question excluded was too leading in its character, since immediately following, in response to a more general question, the witness stated that Mrs. Fielding said she would not have cared if the appellant had taken her to a decent place. We see no error in the exclusion of the question first propounded as above because of its leading form, but conceding the ruling upon it to have been erroneous, the error was cured by the proceedings which immediately ensued.

In his opening statement to the jury the prosecuting attorney said that the appellant was a " dirty dog," and that in separating the prosecuting witness from her companions he acted " like a dirty dog as he was," and it is argued that the using of such epithets in a mere opening statement constituted such misconduct on the part of the prosecuting attorney as requires a reversal of the judgment.

It was, strictly speaking, a breach of professional decorum to apply opprobrious epithets to the appellant in advance of the introduction of any evidence from which disparaging inferences might have been drawn, and the circuit court would have been justified in restraining the prosecuting attorney from the use of such epithets in a merely opening statement; but the breach of professional decorum thus involved ought not to be regarded as of sufficient importance to cause a reversal of the judgment. *Bessette* v. *State*, 101 Ind. 85; *Epps* v. *State*, 102 Ind. 539.

The record in this cause is comparatively a very voluminous one, much more so, it seems to us, than was necessary to have been made in such a cause, and, for that reason, some of the minor matters to which our attention has been called in argument may have escaped us in our examination of the record; but, so far as we have been able to observe, all the legal propositions necessary for the information of the jury were fairly, and with substantial accuracy, embraced within the instructions given by the court upon its own motion; consequently, no cause has been shown for a reversal of the judgment either on account of instructions given or instructions refused.

It is finally claimed that the verdict was not sustained by the evidence in some material respects, and that for that reason, if for no other, the judgment ought to be reversed. There were some weak points in the evidence, and on that account there is room for grave apprehension that the jury may have made a mistake in the conclusion at which they arrived, but there was evidence tending, in some degree, to sustain all the material averments contained in the indictment, and, under such circumstances, we ought not to reverse the judgment upon the evidence.

The judgment is affirmed, with costs.

Filed Dec. 31, 1885.

## On Petition for a Rehearing.

NIBLACK, C. J.—The appellant complains that the circuit court erred in modifying instruction No. 6, and in refusing to give instruction No. 8, asked by him respectively at the trial, and that we failed to consider the questions arising upon those instructions at the former hearing of this appeal. This failure on our part was a mere inadvertence, resulting from the voluminous character of the record, as well as of the brief filed on behalf of the appellant.

Instruction No. 8, asked as above, was as follows: " In this case you are the sole judges of the law, and your right

to determine the law of the case for yourselves, goes to this extent that, even if all the facts alleged in the indictment are established by the evidence beyond a reasonable doubt, you have still the right to determine whether or not such facts, when so established, constitute a public offence under the laws of this state, and if you determine that they do not, you have the right to acquit the defendant. You are not bound by the instructions given by the court as to the law, but are at liberty to disregard such instructions if you see fit to do so, and determine the law for yourselves."

This instruction invoked, in any event, a too extreme construction of section 19 of the Bill of Rights which declares that, " In all criminal cases whatever, the jury shall have the right to determine the law and the facts." This provision evidently means that the jury have the right to determine all questions of law applicable to such matters as they are required to consider in making up their verdict, but can not be rightfully construed to mean that the jury are the sole judges of the law in every respect in a criminal cause. The court judges of the sufficiency of an indictment under the law. It decides all questions of law arising upon the admissibility of evidence, and has the power to grant a new trial when the jury have erroneously determined the law injuriously to the defendant. The judge, too, is required to instruct the jury upon all matters of law necessary for their information in the rendition of a verdict in a criminal cause. Thus instructing the jury involves, in a qualified sense at least, the exercise of a judgment upon all matters of law concerning which the judge must give information to the jury.

The jury are, consequently, not, strictly speaking, the *sole* judges of the law in all its relations to a criminal case. Then, too, the instruction in question came too near carrying with it the intimation that the jury have the right in their mere discretion to disregard all law in reaching a verdict in a criminal prosecution. This they have the *power* to do in many cases, but have no legal or moral *right* to do under the Con-

stitution, or otherwise. The kind of right, referred to in the Bill of Rights is defined by Webster in his dictionary to be a "privilege or immunity granted by authority." In a more comprehensive sense it may be said to be "a privilege or immunity recognized or conferred by competent authority." It is the duty of the jury to avail themselves of all the opportunities which may be afforded them to ascertain what the law governing the case before them is, and it is their right, after hearing all that may be properly said on the subject, to determine what the law in that respect ought to be held to be, and to decide accordingly, but this does not place the jury above the law, or confer upon them the lawful right to decide simply as they "see fit," regardless of all law, as it has been recognized or established by the proper tribunals. The judgment in the case of *Hudelson* v. *State*, 94 Ind. 426 (48 Am. R. 171), was reversed because one of the instructions given in the cause was esteemed to have been too mandatory in its structure, and hence to have trenched too much upon the province of the jury. The doctrine of that case does not sustain the instruction refused in this case in all of its essential features, as claimed by counsel, and we think that case carries the right of the jury to determine the law in a criminal case to its extreme limit, in a practical point of view. We are, therefore, of the opinion that the circuit court did not err in refusing to give instruction No. 8 hereinabove set out.

The concluding part of instruction No. 6, asked by the appellant and given in a modified form, contained a more condensed, but substantially similar, statement of the law, to that embraced in instruction No. 8, except that it did not assert that the jury were the sole judges of the law in a criminal case, and the modification complained of consisted in the striking out the concluding part of the instruction.

The fifth clause of section 1823, R. S. 1881, after providing that the judge shall in a criminal case state to the jury all the matters of law necessary for their information, concludes as follows : " If he present the facts of the case, he

must inform the jury that they are the exclusive judges of all questions of fact, and that they have a right also to determine the law."

Instruction No. 5, given to the jury by the circuit court upon its own motion, in this case was in these words: "You are exclusive judges of all questions of fact, and you have the right, also, to determine the law."

This instruction was a substantial affirmation of the Bill of Rights as well as a sufficient compliance with the provision of the statute lastly above set out on the subjects to which it related, and while the circuit court might, in its discretion, have given further and more elaborate instructions on either one or both of these subjects, it was not error to refuse to do so, and it was better, perhaps, not to attempt to do so.

Other grounds are suggested as reasons for a rehearing, but these suggestions relate to questions which were considered with care at the former hearing, and upon which we regard it as unnecessary to enter into a formal review.

The petition for a rehearing is overruled.

Zollars, J., was absent.

Filed March 13, 1886.