Alvin BEST, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 3–382A48.

Court of Appeals of Indiana, Third District.

Sept. 29, 1982.

Timothy M. Bemis, Gregory Nicosia & Associates, Griffith, for appellant.

Linley E. Pearson, Atty. Gen., of Indiana, Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

Alvin Best was found guilty by a jury of two counts of child molesting, class C felonies,[1] and sentenced to concurrent periods of five years on each count. In appealing

---

1. IC 35–42–4–3(c).

those convictions, Best raises the following issues:

 (1) whether the evidence was sufficient to support the verdict of the jury;

 (2) whether the trial court erred in overruling Best's motion to suppress and in admitting into evidence State's Exhibits B through W;

 (3) whether the trial court erred in admitting certain testimony;

 (4) whether the trial court erred in refusing to give defendant's Instruction No. 1; and

 (5) whether Best should have been granted a new trial based on newly discovered evidence.

In reviewing the sufficiency of the evidence, the Court of Appeals neither weighs the evidence nor judges the credibility of the witnesses, but examines only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. When there is substantial evidence of probative value supporting the verdict, the conviction will not be set aside. *Jones v. State* (1982), Ind.App., 435 N.E.2d 616.

■ Best did not deny having sexual relations with Susan, a fifteen-year-old runaway. However, relying on IC 1971, 35–42–4–3(e) (Burns 1979 Repl.), he asserted the defense that he reasonably believed she was sixteen or older at the time of the conduct.

Susan did not testify at the trial. However, photographs of Best and Susan were admitted into evidence. Susan's mother testified as to her daughter's age. Two other witnesses testified that Best knew they were under the age of sixteen when he became involved with them. Additionally, Rebecca Moore, who lived with Best, testified that she told Best that Susan was only fifteen before Best and Susan engaged in any sexual relations. Moore also testified that Best procured a false birth certificate for Susan.

Because Best testified he believed Susan to be at least sixteen years old, and Rebecca Moore testified that Susan sometimes tried to make people believe she was older than she was, Best would have this Court reweigh the evidence and find in his favor. This cannot be done. There was sufficient evidence presented to the jury, as the trier of fact, to enable it to find that Best was aware of Susan's age and to support his conviction.

Best next posits that the trial court erred in overruling his motion to suppress and in admitting into evidence State's Exhibits B through W, which were photographs of three juveniles, Diana, Vondell, and Susan. He argues that Exhibits B through U were irrelevant and immaterial since they were photographs of Diana and Vondell and had no connection with the alleged victim, Susan.

■ State's Exhibits B through U were photographs of the girls either nude or scantily clad. The exhibits were properly admitted within the depraved sexual instinct rule as showing Best's propensity for sexual involvement with girls under the age of sixteen. In an opinion involving an appeal from another conviction for child molesting, this Court stated:

"Generally, evidence of criminal activity other than that charged is inadmissible on the question of guilt. *Cobbs v. State* (1975), 264 Ind. 60, 338 N.E.2d 632. Yet it is now settled that such evidence is freely admitted to show depraved sexual instinct when sodomy, incest or a similar offense is charged. *Gilman v. State* (1972), 258 Ind. 556, 282 N.E.2d 816. The basis for this exception is that in prosecutions for depraved acts the complaining witness is not likely to be believed inasmuch as the evidence standing alone and entirely unconnected with anything which led to or brought it about would appear unnatural or improbable in itself. *Grey v. State* (1980), Ind., 404 N.E.2d 1348. Thus acts tending to indicate a depraved sexual instinct are admissible subject only to exclusion for remoteness. *Bowen v. State* (1975), 263 Ind. 558, 334 N.E.2d 691." *Omans v. State* (1980), Ind. App., 412 N.E.2d 305, at 311.

The photographs were not challenged for remoteness and were admissible as tending to indicate a depraved sexual instinct.

■ Best further alleges that State's Exhibits B through W were inadmissible in that the photograph album in which they were contained was the fruit of an illegal search and seizure.

Two undercover police officers, Novosel and Lawson, were sent to Best's residence in an effort to locate Diana, a fourteen-year-old runaway. They were met at the door by a young girl they recognized as Diana. They engaged in a conversation concerning "partying" or "having a good time there." They were allowed into the residence and told to wait for Rebecca. Novosel followed Diana into another part of the house while Lawson went into the living room and sat on the couch. Lawson observed an open photograph album on a coffee table in the living room. Shortly thereafter, the policemen placed Diana under arrest, and the photograph album was taken to police headquarters.

The instant case appears similar to another which was before this Court a short time ago, *May v. State* (1977), 173 Ind.App. 482, 364 N.E.2d 172. In *May* the policemen were investigating information they had received concerning a residence frequented by juveniles in their search for two missing young women. While still outside the house, the policemen observed through a lighted window, a set of scales and marijuana. This Court held:

> "Indiana has allowed the warrantless seizure of evidence which was within the plain view of an arresting officer. *Lindsey v. State* (1965), 246 Ind. 431, 204 N.E.2d 357; *Brown v. State* (1959), 239 Ind. 358, 157 N.E.2d 174; *Johnson v. State* (1975), 163 Ind.App. 684, 325 N.E.2d 859. The standard followed has generally been one of reasonable police behavior under the particular circumstances of each case.

> \* \* \* \* \* \*

> "One of the critical elements involved in allowing the warrantless seizure of contraband from a private place, because it

was observed in plain view, is that the seizing police officers must be justified in their having been in the particular place of observation.

\* \* \* \* \* \*

> "In this context it is clear that the evidence which was in plain view was observed by an officer rightfully in a position to have such a view and as such should not be regarded as having been discovered through a search. *Johnson v. State, supra* (1975), 163 Ind.App. 684, 324 N.E. 859; *see also, Alcorn v. State, supra* (1970), 255 Ind. 491, 265 N.E.2d 413; *United States v. Hanahan* (7 Cir. 1971), 442 F.2d 649. Once the contraband fell into Officer Meeks' 'plain view,' it was subject to seizure and properly admissible in evidence. *Brown v. State, supra* (1959), 239 Ind. 358, 157 N.E.2d 174; *Harris v. United States* (1968), 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067." *May, supra,* 173 Ind.App. at 484–486, 364 at 173–174.

Lawson and Novosel testified they went to Best's residence to investigate a teenage runaway and possible prostitution and narcotics. They were admitted into the house by the teenage runaway, Diana, who testified she had "the run of the house." Once inside, the open photograph album containing photographs of Diana and others was observed in plain view.

The photograph album was subject to seizure and properly admissible by virtue of the plain view doctrine even though it was a warrantless seizure. The police officers were justified in being in the particular place of observation, since they were invited into the house and permitted to use the telephone which was in the living room where the photograph album was open and in their view.

Best's argument that the police officers' entry was gained by ruse is without merit. The United States Supreme Court held in *Lewis v. United States* (1966), 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 that the government's use of decoys and undercover agents in certain instances is not only law-

ful, but often is a practical necessity in enforcing the law and apprehending those engaged in criminal enterprise. Use of undercover police officers was permissible in the instant case since they testified that in addition to investigating the residence in a search for the teenage runaway, Diana, they were also conducting a correlative investigation into possible prostitution and narcotics violations.

For the above reasons, the trial court committed no error in overruling Best's motion to suppress or in admitting into evidence State's Exhibits B through W.[2]

The next allegation of error raised by Best is the admission of testimony by Vondell. He contends her entire testimony was immaterial, and she should not have been allowed to testify.

■ The admissibility of evidence is within the sound discretion of the trial court. *Clouse v. Fielder* (1982), Ind.App., 431 N.E.2d 148. The Court of Appeals will reverse a trial court for abuse of discretion only when the trial court's action is clearly erroneous and against the facts and circumstances before the trial court or reasonable inferences to be drawn therefrom. *English Coal Co., Inc. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302. Evidence tending to prove a material fact is admissible, even though its tendency in that direction may be exceedingly slight. *Thomas v. State* (1968), 251 Ind. 76, 238 N.E.2d 20.

■ Vondell testified that she was a fourteen-year-old runaway when she stayed with Best at his residence. She also testified that she advised Best of her age, and he attempted to obtain false identification for her. Best's actions with regard to Vondell were substantially similar to the allegations against him with regard to Susan. Additionally, her testimony was used as a foundation for the introduction of State's Exhibits M through U, which were admitted to show Best's depraved sexual instinct. Therefore, Vondell's testimony was materi-

al to the case, and the trial court did not err in allowing her to testify.

Best next alleges the trial court erred in refusing his tendered Instruction No. 1, which read:

"If you find that the State has failed to prove any one of the essential elements of the crime charged, you find the defendant not guilty of that crime. You should then decide whether the State has proved beyond a reasonable doubt all of the elements of the included crime of battery Class B misdemeanor.

"The included crime of battery Class B misdemeanor is defined as follows:

'A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor.'

"If the State failed to prove each of the essential elements of the crime of battery Class Be [sic] misdemeanor beyond a reasonable doubt, the defendant should be found not guilty."

*Record* at 102.

■ The determination of whether a particular lesser offense is included within the charged crime is to be made on a case-by-case basis. The trial court must examine the criminal statutes which define the greater and lesser offenses, together with the allegations of fact contained in the charging instrument. *Roddy v. State* (1979), Ind.App., 394 N.E.2d 1098.

■ Assuming, arguendo, that battery is a lesser included offense, the failure to give such an instruction in this case would, at most, result in harmless error. Best was charged with performing sexual intercourse and deviate sexual conduct with a person fifteen years of age. There is uncontroverted evidence of the acts. The only conflicting evidence was Best's testimony that he believed Susan was older than sixteen. Obviously, the jury chose not to believe Best, but rather to believe Rebecca Moore who testified she told Best how old Susan

---

2. See also the recent Indiana Supreme Court opinion in *Caccavallo v. State* (1982), Ind., 436 N.E.2d 775.

was before any sexual relations occurred between them. This decision by the jury cannot be tampered with. The evidence in this case supported a conviction for child molesting or no conviction at all.

See, *Maxwell v. State* (1980), Ind.App., 408 N.E.2d 158; *Roddy, supra; Jarrett v. State* (1975), 166 Ind.App. 19, 333 N.E.2d 794.

 Finally, Best contends he should have been granted a new trial based on newly discovered evidence. An application for a new trial made on the basis of newly discovered evidence must be supported by an affidavit or affidavits which make a showing of fact that, 1) the evidence has been discovered since the trial; 2) that it is material and relevant; 3) that it is not cumulative; 4) that it is not merely impeaching; 5) that it is neither privileged nor incompetent; 6) that due diligence was used to discover it in time for trial; 7) that the evidence is worthy of credit; 8) that it can be produced upon retrial of the case; and 9) that it will probably produce a different result. *Sanders v. State* (1977), 175 Ind.App. 209, 370 N.E.2d 966.

 A motion for a new trial on the basis of newly discovered evidence should be received with great caution, and the alleged new evidence should be carefully scrutinized. The trial court, in deciding whether to grant a new trial, may consider the weight a reasonable trier of fact might give the alleged newly discovered evidence. It may also evaluate the probable impact of the evidence on a new trial in light of the facts and circumstances of the original trial. Whether to grant a new trial on the basis of newly discovered evidence is a matter within the sound discretion of the trial court, and the trial court's decision will be overturned on appeal only for a demonstrated abuse of that discretion. *Sanders, supra.*

 Best submitted the affidavits of George Walker and Rose Novotny. The identical affidavits stated that each was present the night the sexual activities took place between Best and Susan. Both stated they were at the dinner table that evening and no conversation between Rebecca Moore and Best took place concerning Susan's age. They also stated that Rebecca Moore told them in a telephone conversation that she lied on the witness stand because the prosecutor had threatened to take her child away from her.

Only George Walker testified at the hearing on the motion. At that time he testified there was no dinner table, no dinner, and no conversation. He also could not account for why he and Rose Novotny were never mentioned as being in the house that night when Best and Rebecca Moore testified at trial as to who was there.

This evidence is merely cumulative of that submitted at trial. There was testimony that Susan appeared older than her age and told people she was older. Best testified that he had not been told Susan's age. But the jury obviously chose not to accept his defense. It is not clear that a different result would be reached with the addition of this evidence. Also, it is not clear that due diligence was exercised by Best to obtain this evidence in time for trial. In fact no mention of these people being at the house was made by Best during the trial, although Walker claimed to have lived there for over a year. Since Rose Novotny was not produced for the hearing, it is questionable whether she could be produced for a new trial. The trial court committed no error in denying Best's motion for a new trial based on newly discovered evidence.

Having found no reversible error, the Best's convictions are affirmed.

Affirmed.

STATON, J., concurs.

RATLIFF, P. J., participating by designation, concurs.